1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANGELICA M. FELIX, | ) | 1:05cv0672 JMD |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Angelica M. Felix ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable John M. Dixon, Jr., United States Magistrate Judge.[1]

---

[1]The parties consented to the jurisdiction of the United States Magistrate Judge. On January 4, 2006, the Honorable Oliver W. Wanger assigned the case to Magistrate Judge Sandra M. Snyder. On July 16, 2007, the Honorable David F. Levi reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

2        On August 13, 2003, Plaintiff filed an application for disability insurance and SSI

3 benefits.  AR 42.  She alleged disability since May 2, 2003, due to "Bipolar" and problems with

4 her medications.  AR 47-49, 57.  After being denied both initially and upon reconsideration,

5 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 32-35, 38, 230.

6 On December 16, 2004, ALJ Bert C. Hoffman held a hearing.  AR 232-258.  ALJ Hoffman

7 denied benefits on January 12, 2005.  AR 9-17.  On April 1, 2005, the Appeals Council denied

8 Plaintiff's request for review.  AR 4-6.

9        Hearing Testimony

10       The hearing convened in Bakersfield, California.  AR 232.   Plaintiff appeared with her

11 attorney, Geoffrey Hayden.  AR 234.  Mary Ann Krating, a mental health recovery specialist,

12 also appeared and testified.  AR 250-257.

13       Plaintiff was born on June 21, 1981.  AR 236.  Plaintiff testified that she completed

14 twelfth grade.  AR 236.  She is 5'6" and weighs 190.  AR 236.  She is right-handed.  AR 236.

15 She can read and write.  She has a driver's license.  AR 236.   She does not drive.  AR 236.  She

16 has to ride the bus.  She does not have a car.  AR 236.  She has trouble driving because she gets

17 nervous and does not know if she is "driving right."  AR 236-237.

18       Plaintiff testified that she last worked in November 2003 as a cashier at Big Lots, the

19 discount store.  AR 237.  She worked there about two weeks.  AR 237.  They did a background

20 check and she was fired.  AR 237.  She also has worked at Wendy's, Arby's and Burger King in

21 fast foods.  AR 237.  She left those jobs because she became pregnant.  AR 238.  After that, she

22 worked at Dan's Pizza.  They were not "doing good," so they let her go.  AR 238.

23       Plaintiff testified that she cannot work now because she is on three different kinds of

24 medications and they make her very tired.  AR 238.  It is hard for her to focus.  AR 238.  She

25 spaces out a lot.  AR 238.  She is supposed to be on her bipolar medications, but she has a son

26 and she has to wake up and take care of him.  AR 238.  The bipolar medications cause her side

27

28        [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  effects. AR 238. They make her very tired, and it is a deep sleep. AR 238. They make her

2  forget what she says or what she does. AR 238.

3       Plaintiff receives treatment for her bipolar condition at Mental Health. AR 238. Her

4  caseworker is Mary Ann Krating, who was with Plaintiff at the hearing. AR 238. Plaintiff sees

5  Ms. Krating twice a month. AR 238. Ms. Krating helps Plaintiff with her problems, counsels

6  her, and makes sure she is going through the program. AR 239.

7       Plaintiff testified that her doctor is Dr. Desai.[3] AR 239. She sees Dr. Desai once a

8  month. Dr. Desai prescribes medication. Plaintiff has been going to Kern County Mental

9  Health[4] since 2002. AR 239. It was court ordered. AR 239. Plaintiff is on probation. AR 239.

10 She has been on probation since 2002. AR 239-240. She gets off of probation in 2005. AR 240.

11 She calls her probation officer and sees him when he calls her in. AR 240. Plaintiff testified that

12 she has a lot of questions for her probation officer. AR 240. She calls him a lot and asks him if

13 things are "okay to do or not okay to do." AR 240.

14      Plaintiff testified that she does not go out much. AR 240. She stays in her house most of

15 the time. AR 240. She lives with her son. AR 240. Her parents help support her and she

16 receives AFDC. AR 240. She does housework. AR 240.

17      Plaintiff testified that she does not finish things when she starts them. AR 240. She has

18 problems keeping her mind on things. AR 240-241. She cannot keep her concentration on

19 something for two hours straight. AR 241. She has trouble sleeping. AR 241. Sometimes she

20 sleeps "over" and then is awake longer. AR 241. She is not on a time schedule like "go to bed

21 early, wake up early." AR 241.

22      Plaintiff's child is four. AR 241. Her parents kept her child while she was in prison. AR

23 241. She got out in December 2002. AR 241. After she was out, she lived with her baby's dad

24 for three or four months. AR 241. Since then, she has lived with a friend, moved back with the

25 ─────────────

26      [3]The hearing transcript identifies Plaintiff's psychiatrist as "Dr. Desi" or"Dr. Kamal Fasan." AR 239, 252.
   The medical records identify Plaintiff's psychiatrist as "Dr. Komal Desai." AR 197. For ease of understanding, the

27 Court will refer to Plaintiff's psychiatrist as "Dr. Komal Desai" or "Dr. Desai."

28      [4]The hearing transcript identifies the facility as "Current County Mental Health." AR 239. The medical
   records identify the facility as "Kern County Mental Health." AR 165-214. For ease of understanding, the Court
   will refer to this facility as "Kern County Mental Health" or "Mental Health."

1  baby's dad, and then her parents got her an apartment.  AR 241-242.  She has been in the

2  apartment since April 2004.  AR 242.  After getting out of prison, she has been the provider for

3  her child.  AR 242.

4       Plaintiff shops at Food Max.  AR 242.  Her mom takes her to and from Food Max.  AR

5  242.  Plaintiff takes the bus to and from Mental Health, her school, and anywhere her parents

6  cannot take her because they work.  AR 242-243.  Plaintiff's mom takes Plaintiff's child to

7  school.  AR 243.

8       Plaintiff testified that she was going to school at "BC."  AR 243.  She stopped going to

9  BC around October.  AR 243.  She had been going since September.  AR 243.  She went for a

10  month.  AR 243.  She stopped going because she was having problems with being there on time,

11  remembering her homework, doing her homework and "all the people."  AR 243.  She did not

12  feel like she belonged there.  AR 243.

13       Plaintiff testified that she does not go to church regularly.  AR 244.  She last looked for a

14  job about two weeks before the hearing.  AR 244.  It was a job as a receptionist.  AR 244.

15       Plaintiff's probation officer is John McGowan.  AR 244.  He does not suggest what kind

16  of job she might be able to get.  AR 244.  She asks him if it is okay if she works there if she gets

17  offered a job and he says yes or no.  AR 244.  Plaintiff testified that she did not get a call back for

18  the receptionist job.  AR 244.  She faxed a resume.  AR 244.  She faxed her resume a lot.  AR

19  244.  She uses the fax machine at Career Services Center.  AR 244.  It is about a block away

20  from where she lives or a couple blocks from her mom.  AR 244.  Her mom can drop her off and

21  pick her up.  AR 244.

22       Plaintiff testified that she spent Thanksgiving with her parents.  AR 244-245.  She is not

23  allowed to go to the movies.  AR 245.  The state does not allow her to go.  AR 245.  She is

24  allowed to visit grocery stores and retail stores.  AR 245.  She cannot go inside the mall, just to

25  the department stores.  AR 245.  After she is off of probation, Plaintiff testified that she thinks

26  she can go to the mall, but she still is not going to the mall.  AR 245.  She is a registered sex

27  offender.  AR 245.  When she said background check for the cashier job, that is what showed up.

28  AR 245.  Plaintiff testified that she told them prior to the check.  AR 246.

1    Plaintiff testified that the friend she lived with was a lady she met job searching.  AR 246.

2  Plaintiff lived with her about five months.  AR 246.

3    Plaintiff testified that her child's father does not play any role in raising the child.  AR

4  246.  He provides no support.  AR 246.  In response to questions from her attorney, Plaintiff

5  testified that the child's father was abusive to her.  AR 247.  He physically assaulted her, which

6  is why she is no longer with him.  AR 247.

7    Plaintiff testified that she has lost interest in things.  AR 247.  She feels worthless.  AR

8  247.  She has trouble with her "concentration of memory."  AR 247.  She has never been

9  suicidal.  AR 247.  Sometimes she hears sounds when they are not there.  AR 247.  She does not

10 get paranoid.  AR 247.  She does not think people are mad at her or out to get her.  AR 247.  She

11 has crying spells a couple of times a week.  AR 247-248.

12    On a normal day, Plaintiff gets up, gets her son ready, takes a shower, does her hair, does

13 her makeup, gets her clothes ready, cleans the house, and then tries to figure out the bus times.

14 AR 248.  She goes to school or to Mental Health on the bus.  AR 248.  She is not going to school

15 right now.  AR 248.  She was going to Bakersfield City College.  AR 248.  She dropped out.  AR

16 248.  She goes to Mental Health twice a week.  Her caseworker has been to her house one time.

17 AR 248.  She goes to see her caseworker at Kern County Mental Health.  AR 248-249.

18    Plaintiff testified that the biggest thing to prevent her from working eight hours a day,

19 five days a week, 50 weeks a year at any kind of simple job is her medications.  AR 249.  They

20 make her shake and get her tired.  AR 249.  She spaces out.  AR 249.  She does not remember

21 what she was going to say, even though she is thinking what she is going to say.  AR 249.  She

22 has problems following instructions.  AR 249.  She has to write them down, constantly remind

23 herself, or have somebody remind her what to do.  AR 249.  Plaintiff testified that she thinks

24 people are talking about her and she gets "scared, kind of."  AR 249.  She thinks people are

25 talking about her all the time.  She feels like she is different.  AR 249.  She does not feel she is

26 getting any better.  AR 249.  Plaintiff testified that she thinks she going to be doing "a good job"

27 five years from now and that is what she wants to do.  AR 250.

28

1    Plaintiff's caseworker, Mary Ann Krating, provided testimony. AR 250. Ms. Krating

2  works at Kern County Mental Health. AR 251. She is a mental health recovery specialist with

3  special training. AR 251. She has a Master's Degree in Forensic Psychology. AR 251. She

4  does not have a Ph.D. AR 251. Plaintiff is one of her clients. AR 251. She provides individual

5  therapy to Plaintiff, coordination of Plaintiff's services, reports for Plaintiff's probation, and

6  coordination of other services for Plaintiff such as case management. AR 251.

7    Ms. Krating testified that Plaintiff has been diagnosed with bipolar disorder and social

8  anxiety disorder. AR 252. Dr. Komal Desai, the psychiatrist, diagnosed Plaintiff. AR 252.

9  Plaintiff also has Paraphilia. AR 252. Ms. Krating testified that the most recent information

10  should have social anxiety disorder and bipolar disorder. AR 252. Plaintiff has been treated for

11  a year with Mental Health. AR 252. The original intake evaluation by Dr. Desai is dated

12  September 29, 2003. AR 252-253. The initial evaluation is the first time Dr. Desai sees

13  someone. AR 253. Dr. Desai makes a few rule out diagnoses, because she only has seen Plaintiff

14  one time. AR 253. The future diagnosis shows that it is no longer a rule out because Plaintiff

15  has been seen every month by Dr. Desai. AR 253. The initial evaluation is the only typed

16  evaluation by Dr. Desai unless there is some kind of major change. AR 253.

17    Ms. Krating testified that the bipolar disorder is a rapid change in Plaintiff's moods. AR

18  253. Plaintiff mainly suffers from the depressive part of the bipolar disorder, which means that

19  she has difficulty with motivation, difficulty getting out of bed and difficulty with all of the

20  symptoms that go along with depression. AR 253-254. The other diagnosis is a social anxiety

21  disorder, which means that Plaintiff has difficulty interacting with people for fear of being judged

22  and fear of being evaluated. AR 254. Plaintiff has difficulty going to the store and difficulty in

23  the group. AR 254. Ms. Krating testified that at one point, before they got a good idea that she

24  had social anxiety disorder, Plaintiff almost had to be discharged because she was not

25  participating in group. AR 254. She was court ordered to participate in group, but she was

26  having a very difficult time because of her problems. AR 254.

27    Ms. Krating testified that Plaintiff would have problems with concentration. AR 254.

28  The ALJ indicted that concentration is checked off intact in the notes. AR 254. Ms. Krating

testified that Dr. Desai would see Plaintiff for "probably 10 minutes, once a month" because she is doing a medical check. AR 254. Dr. Desai finds out if Plaintiff is experiencing any different symptoms or if she is having side effects from the medication. AR 254.

Ms. Krating testified that she did not remember if Plaintiff indicated that she has had side effects from the medication. AR 255. She did not recall. AR 255. Ms. Krating testified that Plaintiff's illness would cause problems with concentration. AR 155. Plaintiff never has told Ms. Krating that she has been suicidal. AR 255. Plaintiff has talked about paranoia in regard to how people evaluate her. AR 255. Ms. Krating testified that one of the components of social anxiety disorder is feeling that you are being evaluated harshly by other people, which makes Plaintiff "not want to leave the house." AR 255.

Ms. Krating testified that Plaintiff has talked about crying spells. AR 255. In Ms. Krating's opinion, Plaintiff's disorder would cause, and had caused, problems with Plaintiff working eight hours a day, five days a week. AR 255. She could not pinpoint one thing that would be the biggest problem. AR 256. It would have to be a combination of depression, social anxiety disorder, and difficulty concentrating. AR 256.

Ms. Krating testified that in her individual therapy sessions, Plaintiff has to write everything down because if she does not then it is "kind of gone." AR 256. If Plaintiff uses that mechanism, it helps for certain areas. AR 256. If Ms. Krating gives Plaintiff homework assignments and Plaintiff writes it down, then Plaintiff is able to complete that homework assignment. AR 256. She testified that Plaintiff has two weeks to complete the assignment, so it is a much different situation than a job where you have to do something much quicker. AR 256.

Plaintiff has not talked about agoraphobia. AR 256. Plaintiff is in group therapy two times a week and Ms. Krating tries to see Plaintiff once every two weeks. AR 256-257. Plaintiff has been going to Kern County Mental Health since August 2003, shortly before the doctor wrote the report. AR 257. Ms. Krating testified that these were "two very serious diagnoses, and they really do impact someone's ability to interact with others." AR 257. Plaintiff has had this problem ever since she has been in the program. AR 257. Ms. Krating did not feel comfortable making a long-term prognosis. AR 257.

1    <u>Medical Evidence</u>

2        On December 22, 1998, Patricia A. Gomez-Naranjo, M.D., of Kaiser Permanente

3    conducted a psychiatric evaluation of Plaintiff.  AR 135-137.  Plaintiff complained of feeling

4    depressed most of the time.  AR 135.  She reported that she felt depressed since sixth grade.  AR

5    135.  She had been seeing a therapist for approximately three years.  AR 135.

6        On Mental Status Examination, Plaintiff had very poor eye contact. AR 136.  Her mood

7    appeared to be depressed.  AR 136.  Her affect was constricted and she appeared to be puzzled at

8    times.  AR 136.  Her thought process was goal directed and her thought content was devoid of

9    hallucinations or delusions.  AR 136.  She was alert and oriented.  AR 136.  Her judgment and

10   insight "appeared to be good."  AR 136.  Dr. Gomez-Naranjo assessed Plaintiff with dysthymic

11   disorder and assigned her a Global Assessment of Functioning ("GAF") of 60.  AR 137.  The

12   treatment plan was to start Plaintiff on the antidepressant Paxil.  AR 137, 138.

13       On March 11, 1999, Plaintiff saw Dr. Gomez-Naranjo for follow-up treatment.  AR 134.

14   Plaintiff's mom reported a significant improvement in Plaintiff's mood after starting the Paxil,

15   but Plaintiff again was starting to get very irritable.  AR 134.  Dr. Gomez-Naranjo assessed

16   Plaintiff with dysthymic disorder and planned to increase Plaintiff's Paxil dosage.  AR 134.

17       On July 31, 2001, Carol Sayer, L.M.F.T., of the Kaiser Permanente Department of

18   Psychiatry completed an Outpatient Evaluation and Treatment Plan form.  AR 129-133.  Plaintiff

19   presented with depression.  She complained of crying, yelling, depressed moods, increased

20   irritability and fatigue.  AR 129.  Therapist Sayer noted that Plaintiff had a long history of

21   depression, as early as sixth grade, and conflicts with her parents.  AR 129.  Plaintiff also had a

22   history of psychiatric treatment with Irene Valos from 1995 to 1989.  AR 129.  Therapist Sayer

23   noted that Plaintiff had received "Depo shots" and started taking Zoloft.  AR 130.

24       On Mental Status Examination, Therapist Sayer opined that Plaintiff was cooperative and

25   friendly.  AR 131.  She had a dysphoric mood and full affect.  AR 131.  She had goal directed

26   and relevant thought content/process/perceptions.  AR 131.  She was not a suicide or homicide

27   risk.  AR 131.  She had no problems with orientation and concentration.  AR 132.  She had

28   problems with memory and was noted to be forgetful.  AR 132.  She had good insight and

1   judgment. AR 132. Therapist Sayer diagnosed Plaintiff with dysthymia and assigned Plaintiff a

2   Global Assessment of Functioning of 55. AR 132. The treatment plan included a referral to

3   Irene Valos for outpatient treatment and a pending medical evaluation. AR 132.

4       In August 2002, staff at the Kern County Correctional Department completed a

5   Medical Screening form. AR 95. Plaintiff's mental status was described as "alert-oriented."

6   She denied taking any medications, including psychiatric medications. AR 95. Thereafter, Kern

7   County Correctional Facilities Medication Records showed that Plaintiff took Valproic Acid

8   (September 20, 2002-December 15, 2002), Atalax (November 24, 2002-December 11, 2002),

9   Paxil (October 9, 2002-December 22, 2002), Depakote (October 8, 2002-December 22, 2002),

10  and Prozac (December 16, 2002-December 22, 2002). AR 104, 106, 109, 111-116. Medical

11  records dated November 3, 2002 from Kern County Correctional Facilities noted that Plaintiff

12  took Depakote and Paxil for her bipolar disorder. AR 93.

13      On January 24, 2003, Michael Reed, R.N.P., of the Kaiser Permanente Department of

14  Psychiatry completed an Outpatient Evaluation and Treatment Plan form. AR 123-127. Nurse

15  Reed described Plaintiff's presenting problem(s) as a history of bipolar with mania lasting one to

16  two weeks, one to two times per year. AR 123. Plaintiff reported decreased sleep, decreased

17  judgment and irritability. Following a manic phase, she "becomes very depressed." AR 123.

18  Plaintiff had sexual contact with a minor while in a manic phase. AR 123. Nurse Reed noted that

19  Plaintiff had been jailed recently and started on Depakote and Prozac. Plaintiff reported that

20  while taking Depakote for six months she had been losing hair and gaining weight. She was

21  always sleepy. AR 123.

22      On Mental Status Examination, Nurse Reed opined that Plaintiff was cooperative,

23  friendly and wary. AR 125. She had a dysphoric mood and a restricted affect appropriate to

24  context. AR 125. She had goal directed and relevant thought content/process/perceptions. She

25  was not a suicide or homicide risk. AR 125. She had no problems with orientation, memory or

26  concentration. AR 126. Her estimated intelligence level was average. AR 126. She had fair

27  insight and fair judgment. AR 126. Nurse Reed diagnosed Plaintiff as Bipolar I Depressed with

28  a current GAF of 51. AR 126. Her plan of treatment was to stabilize with medications. AR 126.

1   She was prescribed Tegretol and continued use of Prozac.   Her Depakote prescription was

2   discontinued.  AR 127.

3        On February 3, 2003, laboratory results from Southern California Permanente Medical

4   Group showed that Plaintiff had therapeutic Tegretol levels.  AR 120.  She also had normal

5   hematology results (with the exception of low "MPV") and normal chemistry and endocrinology

6   results.  AR 121-122.

7        On February 10, 2003, Plaintiff saw Nurse Reed.  AR 119.  Plaintiff reported that she was

8   fatigued, but otherwise tolerating Tegretol and Prozac.  AR 119.  She was despondent regarding

9   her felony conviction and consequences.  AR 119.  Nurse Reed observed Plaintiff's mood to be

10  dysphoric and assessed her as bipolar and depressed.  AR 119.  He discontinued her Prozac,

11  continued her Tegretol and started her on a trial of Wellbutrin.  AR 119.

12       On June 10, 2003, Plaintiff saw Nurse Reed and reported that she had been off of her

13  medications "for awhile" due to sedation with Tegretol and irritability with Wellbutrin.  AR 118.

14  Plaintiff complained of being depressed and irritable.  Nurse Reed noted that Plaintiff was

15  working part time.  She was socially anxious.  He assessed her as bipolar I, depressed mild,

16  "SAD."  AR 118.  She was started on Paxil and Topamax.  AR 118.

17       On August 11, August 26, and September 3, 2003, Mary Ann Krating, M.A., and Lisa

18  Gavin Cruse, M.F.T., of Kern County Mental Health conducted an assessment of Plaintiff.  AR

19  207.  On September 29, 2003, Ms. Krating and Ms. Cruse completed the assessment report.  AR

20  207-212.  According to the report, Plaintiff was ordered by the court to Kern County Mental

21  Health for counseling.  AR 210.  Plaintiff's psychiatric history revealed that she began attending

22  group therapy for problems with depression at the age of 14.  AR 208.  She continued with

23  therapy through age 19.  AR 208.  She reported currently being on Paxil and Topamax, which

24  was prescribed by "Dr. Michael Reed" at Kaiser Permanente.  AR 208.  She had been diagnosed

25  with bipolar disorder while incarcerated.  AR 208.

26       Ms. Krating and Ms. Cruse noted that Plaintiff had a sporadic work history.  AR 209.

27  She worked at Wendy's for eight months, at L.A. Tower Clothing Store for two weeks, Burger

28

1   King and Arby's for five months, Dean's Italian Pizza for two months and MDS Communication

2   for one week.  She also had other "short-lived jobs."  AR 209.

3        On Mental Status Exam, Plaintiff was oriented in all spheres with an appropriate affect.

4   AR 210.  Ms. Krating and Ms. Cruse opined that Plaintiff's attention and concentration appeared

5   impaired at times.  She appeared to have difficulty answering some questions due to poor

6   concentration.  AR 210.  Her recent memory appeared impaired.  Her remote memory appeared

7   intact.  AR 210.  She denied auditory, visual, or tactile hallucinations and delusions.  She

8   reported symptoms of depression, anxiety and obsessive compulsive behaviors.  AR 210-211.

9        Ms. Krating and Ms. Cruse diagnosed Plaintiff with Paraphilia not otherwise specified,

10  Bipolar Disorder Type II, rule out Social Anxiety Disorder, and Personality Disorder not

11  otherwise specified with dependent traits.  AR 211.  They assigned Plaintiff a GAF of 35.  AR

12  211.  Ms. Krating and Ms. Cruse also opined that Plaintiff had severe functional impairments in

13  community living, in community participation, in community contribution, and in financial areas.

14  AR 211.  She had extreme functional impairments in her relationships with others, in physical

15  and emotional health, and in legal areas.  AR 211.  She only had a mild functional impairment in

16  the area of education and learning.  AR 211.

17       In their narrative report, Ms. Krating and Ms. Cruse indicated that Plaintiff "endorsed

18  numerous mental health symptoms but it was unclear at times whether she was endorsing these in

19  order to possibly make herself look worse than she really is."  AR 211.  They also opined that

20  there were inconsistencies regarding Plaintiff's claim of social anxiety considering Plaintiff "was

21  able to work numerous jobs although not for very long periods of time."  AR 211.  They

22  identified a concern with medication compliance because Plaintiff had been non-compliant with

23  medication at least two times in the past.  AR 211-212.

24       As part of her treatment plan, Ms. Krating and Ms. Cruse indicated that Plaintiff would be

25  required to attend the intake molesters' group to help Plaintiff learn more about sexual abuse,

26  cognitive distortions and the "impact that abuse has on victims."  AR 212.  After successful

27  completion of intake, Plaintiff would be placed in a group specific to her sexual offense.  She

28

1   also was referred to the psychiatrist for medication management and to the case manager for help

2   with financial and housing issues.  AR 212.

3       On August 11, 2003, Plaintiff met with Ms. Krating for her initial assessment.  Ms.

4   Krating opined that Plaintiff's mood appeared anxious.  AR 214.

5       On August 13, 2003, Kern County Mental Health Forensic Services Team initiated a

6   claim for disability and SSI benefits on behalf of Plaintiff.  AR 213.

7       On September 4, 2003, Kern County Mental Health clinicians and staff held a case

8   conference regarding Plaintiff to review her treatment, status, progress and plan.  Dan C.

9   Johnson, Ph.D., noted that Plaintiff was diagnosed as Bipolar I.  AR 206.

10      On September 5, 2003, Plaintiff saw Komal Desai, M.D., at Kern County Mental Health.

11  AR 204-205.  Dr. Desai diagnosed Plaintiff with bipolar disorder type II, paraphilia not otherwise

12  specified, and rule out social anxiety disorder.  AR 205.  Dr. Desai opined that Plaintiff had a

13  moderate disability and she was able to work with support.  AR 205.  Dr. Desai assigned Plaintiff

14  a GAF of 55.  AR 205.  Dr. Desai started Plaintiff on Prozac and Lithium and recommended case

15  management for benefits, legal problems and employment.  AR 205.

16      On September 8, 2003, Plaintiff attended a Plan of Care meeting at Kern County Mental

17  Health with Ms. Krating and an intern.  AR 199-203.  Plaintiff developed a number of objectives

18  and interventions, including finding a part time job before Christmas.  AR 200.  Psychologist

19  Dan C. Johnson, Ph.D., reviewed and approved Plaintiff's Plan of Care, noting that Plaintiff's

20  goals appeared appropriate, time limited and measurable.  AR 199.

21      On September 29, 2003, Dr. Desai completed a psychiatric medication evaluation of

22  Plaintiff to continue Plaintiff on her psychotropic medication.  AR 196-197.  Plaintiff reported

23  mood problems and feeling depressed.  AR 196.  She reported having significant, very rapid

24  mood swings a few times per day and "considerable anxiety in being in social situations."  AR

25  196.  Dr. Desai noted that Plaintiff was taking Paxil and Topamax, but wanted to change her

26  current medication.  AR 196.

27      On Mental Status examination, Plaintiff was fairly groomed and well made up.  AR 197.

28  She was alert and oriented, with a euphoric mood and constricted affect.  AR 197.  She denied

1   any hallucinations and denied any suicidal or homicidal ideation.  AR 197.  Dr. Desai opined that

2   Plaintiff had average intellectual functioning with fair attention, concentration, insight and

3   judgment.  AR 197.

4         Dr. Desai diagnosed Plaintiff with Paraphilia not otherwise specified, rule out Bipolar

5   Disorder Type II, and rule out Social Anxiety Disorder.  AR 197.  Dr. Desai assigned Plaintiff a

6   GAF of 55 and prescribed Prozac and Lithium.  AR 197.  Dr. Desai also recommended follow up

7   with individual and group therapy as recommended by Forensic Services and case management

8   services to help Plaintiff obtain benefits and help with her legal problems.  AR 197.

9         On October 14, 2003, psychiatrist Harvey Biala, M.D., completed a Mental Residual

10  Functional Capacity Assessment form.  AR 139-143.  Dr. Biala opined that Plaintiff only had

11  moderate limitations on the ability to understand and remember detailed instructions and on the

12  ability to carry out detailed instructions.  AR 139.

13        On October 14, 2003, Dr. Biala also completed a Psychiatric Review Technique form.

14  AR 144-157.  Dr. Biala opined that Plaintiff had a dysthymia disorder.  AR 147.  He further

15  opined that Plaintiff had a substance addiction disorder and noted that she had alcohol abuse and

16  poly substance abuse in claimed remission.  AR 152.  Dr. Biala concluded that Plaintiff had mild

17  restriction of activities of daily living and mild difficulties in maintaining social functioning.  AR

18  154.  She had moderate difficulties in maintaining concentration, persistence, or pace.  AR 154.

19  She had no episodes of decompensation.  AR 154.  On January 20, 2004, psychiatrist Luyen T.

20  Luu, M.D., reviewed the file and affirmed Dr. Biala's assessment.  AR 144.

21        On October 16, 2003, laboratory results showed Plaintiff to have a lithium serum count

22  lower than the reference range.  AR 195.

23        On October 17, 2003, Plaintiff again saw Dr. Desai and reported that she was "doing ok."

24  AR 193.  Dr. Desai noted that Plaintiff had poor medication compliance.  She complained of a

25  depressed mood and crying spells.  Dr. Desai opined that Plaintiff's mood was sad.  AR 193.

26  She had an appropriate affect.  AR 193.  She also had fair insight and judgment and intact

27  memory, attention/concentration and orientation.  AR 193.  Dr. Desai diagnosed Plaintiff with

28  bipolar disorder type II and social anxiety disorder.  AR 194.  Dr. Desai further opined that

1  Plaintiff had a moderate disability and could work part-time with support.  AR 194.  Dr. Desai

2  also increased Plaintiff's Prozac dosage.  AR 192, 194.

3       On October 20, 2003, Plaintiff met with Ms. Krating for an individual therapy session.

4  AR 191.  The discussion focused on Plaintiff's offense and her relationship issues with an ex-

5  boyfriend and a roommate.  AR 191.  Plaintiff reported that she had been compliant with her

6  prescribed medication.  She also indicated that the medication was working and had been helping

7  her mood stabilize.  AR 191.

8       On October 30, 2003, Jeannie Renois, LPTII, of Kern County Mental Health prepared

9  progress notes regarding Plaintiff's participation in group.  AR 187.  Ms. Renois noted that while

10  Plaintiff watched a film in group she started crying and saying she did not feel well.  Ms. Renois

11  reported that she took Plaintiff out of group.  Plaintiff was cold and clammy with a slow, light

12  pulse.  AR 187.  Plaintiff told Ms. Renois that it felt like her heart was racing.  Plaintiff was

13  hyperventilating.  Ms. Renois called Plaintiff's mother.  Plaintiff then complained that she was

14  feeling worse and laid down on the floor.  Ms. Renois called 911.  AR 187.  The paramedics

15  came to take Plaintiff to Mercy Hospital.  AR 187.

16       On October 30, 2003, Plaintiff received emergency treatment at Mercy Hospital

17  Bakersfield for complaints of hyperventilation.  AR 162-163.  The history of present illness

18  prepared by David Christensen, M.D., indicated that Plaintiff was in a group therapy session at

19  mental health and, while watching a movie, she became dizzy, very sweaty and anxious.  AR

20  162.  Her ears plugged.  AR 162.  On review, Dr. Christensen reported that all systems  were

21  negative.  AR 162.  Plaintiff was alert, resting comfortably, and in no distress.  AR 162.  She had

22  normal breathing.  AR 162.  There was no evidence of acute coronary syndrome, pulmonary

23  embolus, earache, dissection or pneumothorax.  AR 162.  Dr. Christensen diagnosed Plaintiff

24  with acute situational anxiety.  AR 163.

25       On November 10, 2003, Ms. Krating consulted with Plaintiff's group facilitator regarding

26  Plaintiff's progress as Plaintiff often did not participate and appeared bored.  AR 184.  Ms.

27  Krating and the facilitator discussed Plaintiff's incident in group where she almost fainted.

28

1   Plaintiff claimed it was an anxiety attack, but also admitted to not eating all day, which could

2   have contributed to her illness.  AR 184.

3       On November 10, 2003, Ms. Krating met with Plaintiff for her individual therapy session.

4   AR 184.  The discussion focused on Plaintiff's participation in group, her new job working 10-15

5   hours a week at Big Lots, and her treatment goals.  AR 184.  Plaintiff reported that she obtained a

6   driver's license and was in the process of applying at "BC."  AR 184.  Ms. Krating had collateral

7   contact with Barbara Hearshman at BC supportive services to obtain an appointment for Plaintiff.

8   AR 184.

9       Ms. Krating also met with Plaintiff on November 10, 2003, to review Plaintiff's plan of

10  care.  AR 185.  Ms. Krating noted that Plaintiff had completed some of the interventions

11  necessary for her third goal of becoming more independent.  Plaintiff had obtained a part time

12  job and a driver's license.  She also had researched going back to school.  AR 185.  A new goal

13  was written for Plaintiff to attend college and to receive services with Barbara Hearshman.  AR

14  185, 186.

15      On November 14, 2003, Plaintiff met with Dr. Desai for a progress evaluation.  AR 177-

16  178.  Plaintiff reported having a panic attack while in group.  AR 177.  She had fair medication

17  compliance.  AR 177.  She had "ok" sleep and appetite and adequate school, social, and work

18  function.  AR 177.  Dr. Desai opined that Plaintiff's mood was sad and anxious.  She had an

19  appropriate affect, fair insight and judgment and intact memory, attention/concentration and

20  orientation.  AR 177.  Dr. Desai further opined that Plaintiff's disability was moderate and she

21  was able to work part-time with support.  Her prognosis was guarded.  AR 178.  Dr. Desai

22  increased one of Plaintiff's medication dosages and recommended individual and group therapy.

23  AR 178.

24      On December 2, 2003, Plaintiff met with Ms. Krating.  AR 182.  Ms. Krating noted that

25  Plaintiff was on the verge of failing out of the intake molesters group.  Plaintiff appeared

26  depressed, anxious, and under a great deal of stress.  She reported being fired from her job

27  because of her criminal offense.  AR 182.  Ms. Krating asked Plaintiff to "focus on possibly

28  finding another job."  AR 182.

1    On December 3, 2003, Mary Ann Krating consulted her supervisor regarding Plaintiff's

2    problems, including being fired from her job due to her offense, her roommate problems and her

3    financial problems.  AR 181.  Ms. Krating identified that Plaintiff may not pass group and that

4    there is a concern that Plaintiff may be lying in order to pass.  AR 181.  Ms. Krating also spoke

5    with Plaintiff's case manager regarding Plaintiff's social security application.  AR 181.

6    On December 9, 2003, laboratory tests results showed Plaintiff's lithium serum to be

7    within the reference range.  AR 180.

8    On December 10, 2003, Plaintiff met with Dr. Desai at Kern County Mental Health for a

9    progress evaluation.  AR 175.  Plaintiff reported that she lost her job because of a background

10   check.  AR 175.  She feels lonely and depressed because of the holidays.  AR 175.  Dr. Desai

11   indicated that Plaintiff had fair medication compliance.  Her sleep was noted to be excessive.

12   Her appetite was "ok."  AR 175.  Her mood was depressed and her affect constricted.  AR 175.

13   Her thought process and thought content were unremarkable.  AR 175.  She had fair insight,

14   judgment and memory with intact attention/concentration and orientation.  AR 175.  Dr. Desai

15   opined that Plaintiff's response to treatment was inadequate.  AR 176.  Dr. Desai further opined

16   that Plaintiff had a severe disability.  AR 176.  She was able to work with support.  AR 176.

17   Plaintiff was provided supportive therapy and prescribed Prozac and other medication.  AR 176.

18   On December 10, 2003 and December 14, 2003, Jeannie Renois, LPTII, reviewed

19   Plaintiff's chart for medication changes following her "psych MD exam" with Dr. Desai.  Ms.

20   Renois reported that Plaintiff's lithium was increased.  AR 174, 179.

21   On December 16, 2003, Mary Ann Krating had collateral contact with Barbara

22   Hearshman at Bakersfield College regarding Plaintiff's need to register as a sex offender on

23   campus.  AR 173.

24   On December 17, 2003, Plaintiff met with Ms. Krating for individual therapy.  AR 172.

25   Ms. Krating noted that Plaintiff appeared to be in "a less depressed mood" with a blunted affect.

26   AR 172.  The therapy discussion focused on Plaintiff's medication, parental concerns,

27   educational pursuits and progress in group.  AR 172.  Ms. Krating reported that Plaintiff was

28   seeking classes at Bakersfield College.  AR 172.  Ms. Krating opined that Plaintiff should have

1   more energy to get to classes since her depressive symptoms had "decreased somewhat due to her

2   psychiatric medication taking effect." AR 170.  On that same date, Ms. Krating consulted with

3   her supervisor regarding Plaintiff's progress in group.  AR 172.  Plaintiff passed the intake

4   group, but "just barely." AR 172.

5          On January 2, 2004, Plaintiff met with Dr. Desai for a progress evaluation.  AR 168-169.

6   Plaintiff reported that she was not crying as much, but was still depressed.  AR 168.  Dr. Desai

7   opined that Plaintiff had fair medication compliance with no side effects.  AR 168.  She had "ok"

8   sleep and appetite.  She was cooperative, with a depressed mood and constricted affect.  AR 168.

9   She had fair insight, memory and judgment, with intact attention/concentration and orientation.

10  AR 168.  Dr. Desai reported that Plaintiff had a moderate response to treatment and a guarded

11  prognosis.  AR 169.  Dr. Desai further opined that Plaintiff had a moderate disability and was

12  able to work "with support."  AR 169.  Dr. Desai increased Plaintiff's Prozac dosage.  AR 167,

13  169.

14         On January 5, 2004, Plaintiff met with Ms. Krating for an individual therapy session to

15  discuss offender related issues to reduce risk of relapse.  AR 166.  Plaintiff also discussed issues

16  related to her roommate, finances, relationships and living environment.  AR 166.  Ms. Krating

17  noted that Plaintiff's eye contact was poor.  She instructed Plaintiff to work on eye contact in

18  group.  AR 166.  Following the group session, Ms. Krating reported that Plaintiff's level of

19  interaction in group was "quite poor."  AR 166.

20         On November 17, 2004, Plaintiff saw Dr. Desai.  AR 218-219.  Plaintiff reported "doing

21  better," but feeling shaky sometimes.  AR 218.  Plaintiff's mood was sad and anxious.  Dr. Desai

22  opined that her mood was improved.  AR 218.  She had a constricted affect.  Her thought

23  processes and content were unremarkable.  AR 218.  She had fair insight, judgment and memory.

24  She had intact attention/concentration and orientation.  AR 218.  Dr. Desai described Plaintiff's

25  response to treatment as "moderate."  AR 219.  Dr. Desai assessed Plaintiff with social anxiety

26  disorder and bipolar disorder type II.  AR 219.  Dr. Desai opined that Plaintiff had a moderate

27  disability and she was not able to work.  AR 219.  The progress note for psychotherapeutic

28

1    interventions indicated "looking for a job."  AR 219.  Dr. Desai continued to prescribe

2    medications.  Plaintiff's prognosis was fair.  AR 219.

3        ALJ's Findings

4        The ALJ determined that Plaintiff had last met the insured status requirements for a

5    period of disability and disability insurance benefits on June 30, 2002, and is not insured for

6    these benefits based on an alleged onset date of May 2, 2003.  AR 16.  The ALJ also determined

7    that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.

8    AR 16.  The ALJ found that Plaintiff's impairments of social anxiety disorder, bipolar disorder

9    type II, and paraphilia not otherwise specified were considered "severe."  AR 16.  The ALJ

10   concluded that these impairments did not meet or medically equal one of the listed impairments

11   in Appendix 1, Subpart P, Regulation No. 4.  AR 16.  The ALJ found that Plaintiff's allegations

12   regarding her limitations were not totally credible.  AR 14-15, 16.  He also found that Plaintiff

13   retained the residual functional capacity ("RFC") for work without exertional limitations.  AR

14   16.  She had the mental capacity to handle unskilled work, with limited public contact.  AR 16.

15   The ALJ concluded that Plaintiff was unable to perform her past relevant work as a cashier.  AR

16   19.  Therefore, the ALJ used Medical-Vocational Rule 204.00 as a framework and determined

17   that Plaintiff was not disabled.  AR 17.

18                                **SCOPE OF REVIEW**

19       Congress has provided a limited scope of judicial review of the Commissioner's decision

20   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

21   the Court must determine whether the decision of the Commissioner is supported by substantial

22   evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla,

23   *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v.*

24   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

25   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401

26   (internal quotation marks and citation omitted).  The record as a whole must be considered,

27   weighing both the evidence that supports and the evidence that detracts from the Commissioner's

28   conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and

1  making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v.*

2  *Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

3  determination that the claimant is not disabled if the Commissioner applied the correct legal

4  standards and if the Commissioner's findings are supported by substantial evidence. *See Sanchez*

5  *v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

6  <u>**REVIEW**</u>

7  In order to qualify for benefits, a claimant must establish that she is unable to engage in

8  substantial gainful activity due to a medically determinable physical or mental impairment that

9  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

10  U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

11  such severity that she is not only unable to do her previous work, but cannot, considering her age,

12  education, and work experience, engage in any other kind of substantial gainful work that exists

13  in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

14  burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

15  1990).

16  In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18  C.F.R. § 416.920(a)-(g) (2005).  Applying the evaluation process in this case, the ALJ found that

19  Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability;

20  (2) has an impairment or a combination of impairments that is considered "severe" (social

21  anxiety disorder, bipolar disorder type II, and paraphilia not otherwise specified) based on the

22  requirements in the Regulations (20 C.F.R. § 416.920(c) (2005)); (3) does not have an

23  impairment or combination of impairments that meets or equals one of the impairments set forth

24  in Appendix 1 to Subpart P of Part 404; (4) does not have the residual functional capacity to

25  perform her past relevant work as a cashier; and (5) retains the RFC to perform unskilled work

26  with limited public contact.  AR 16.  Here, Plaintiff argues that substantial evidence does not

27  support the ALJ's Step 5 decision.

28

**DISCUSSION**

A.    Step 5 Decision

Plaintiff contends that the Step 5 decision was not supported by substantial evidence because (1) the ALJ improperly rejected the opinion of her treating psychiatrist; and (2) she is not capable of gainful work activity.

1. Treating Physician Opinion

Plaintiff alleges that the ALJ improperly rejected the opinion of Plaintiff's treating physician.    Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir. 1991).  Clear and convincing reasons also are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983). Here, the ALJ afforded "very substantial weight to the treating records." AR 14.  The ALJ accepted these records to support Plaintiff's diagnoses and treatment.  AR 14.  However, the ALJ afforded limited weight to the November 2004 psychiatric progress note of Dr. Desai, which indicated that Plaintiff was unable to work.  AR 14, 219.  In giving Dr. Desai's conclusion little weight, the ALJ relied on contradictory notes from Dr. Desai, which indicated that the Plaintiff could work with support, and on the immediate findings of Plaintiff's improved mental state. AR 14.  The ALJ's decision to afford little weight to Dr. Desai's November 2004 conclusion is supported by substantial evidence in the record.

According to the record, between September 2003 and January 2004, Dr. Desai consistently opined that Plaintiff was capable of performing work with support (whether part-time or otherwise).  For instance, on September 5, 2003, Dr. Desai concluded that Plaintiff had a moderate disability and was able to work "with support."  AR 205.  On October 17, 2003, Dr. Desai again opined that Plaintiff had a moderate disability and was able to work part-time with support.  AR 194.  On November 14, 2003, Dr. Desai reasoned that Plaintiff's disability remained moderate and she was able to do part-time work with support.  AR 178.  On January 2, 2004, Dr. Desai opined that Plaintiff had a moderate disability and was able to work "with support."  AR 169.  Even when Dr. Desai described Plaintiff's disability as severe in December 2003, the conclusion remained that Plaintiff could work "with support."  AR 176.  The only treatment record that conflicts with the conclusion that Plaintiff was capable of working is Dr. Desai's November 2004 psychiatric progress note.  AR 218-219.  The ALJ is responsible for resolving conflicts in the medical evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Indeed, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Id.*  Although Dr. Desai summarily concluded that Plaintiff was not able to work, Dr. Desai also noted that Plaintiff was "doing better" and her psychotherapeutic interventions included "looking for a job."  AR 218-219.  These notations, along with Dr. Desai's opinions prior to November 2004, support a rational determination by the ALJ that Plaintiff could work.  In addition, evidence in the record demonstrates that Plaintiff's mental health treatment objectives and interventions included obtaining a job, gaining independence and gaining financial stability.  AR 185, 200.  In December 2003, after losing her job because of a background check, Plaintiff was encouraged by her therapist, Mary Ann Krating, to look for another job.  AR 182.

2.    Gainful Work Activity

Next, Plaintiff argues that she lacks the capacity to perform substantial gainful work activity because she cannot perform unsupported, full-time work.  To support her argument, Plaintiff alleges that Dr. Desai's opinion that she either was not capable of work or only was capable of part-time work with support equates with an inability to engage in substantial gainful

1  activity.[5]  This argument is unpersuasive.  In general, substantial gainful activity ("SGA") is

2  substantial work activity for pay or profit.  20 C.F.R. §§ 404.1572 (a), 416.972(a) (2005).  Work

3  may be substantial even if it is done on a part-time basis or if a person does less, gets paid less or

4  has less responsibility than in prior work.  *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir.

5  1990) (part-time work may be considered substantial).

6       To the extent that Plaintiff relies on Title 20 of the Code of Federal Regulations, section

7  416.973(c) to support her contention that work done under "special conditions" does not show

8  the ability to engage in SGA, her reliance is misplaced.  Instead, section 416.973(c) provides that

9  work done under special conditions also may show that a claimant has "the necessary skills and

10  ability to work at the substantial gainful activity level."  20 C.F.R. § 416.973(c) (2005).

11       Insofar as Plaintiff contends that *Gatliff v. Comm'r of the Social Sec. Admin.*, 172 F.3d

12  690 (9th Cir. 1999), provides factual guidance dictating reversal, this contention is without merit

13  and is unsupported by the record.  In *Gatliff*, the claimant was employed sporadically and held

14  20-30 jobs during the 15 years prior to his claimed disability.  *Id*. At 691.  A vocational expert

15  conceded at hearing that the claimant could only be expected to stay in any one job for a "couple

16  of months" before being fired as a result of his mental impairments.  *Id.*  The Commissioner also

17  conceded that the claimant had a work history showing that he performed a job for a duration of

18  about two months and did not dispute that the pattern would continue.  *Id.* at 692.  The Ninth

19  Circuit Court of Appeals reasoned that "substantial gainful activity means more than merely the

20  ability to find a job and physically perform it; it also requires the ability to hold the job for a

21  significant period of time."  *Id.* at 694.  The Court of Appeals concluded that two months is not a

22  significant period.  *Id*.  Unlike the claimant in *Gatliff*, Plaintiff has been able to hold a job for

23  longer than two months.  For example, she worked at Wendy's for eight months and Burger King

24  and Arby's for five months.  AR 209.  Moreover, there is no indication in the record that Plaintiff

25  is unable to hold a job for a significant period of time as a result of her impairments.  Instead, the

26  record reflects that the Plaintiff left three of her jobs for reasons other than her mental

27

28      [5]It should be noted that Plaintiff overlooks the treatment records from Dr. Desai indicating that Plaintiff could work "with support" without any limitation to part-time work.  AR 169, 176, 205.

impairment.  Plaintiff left one job due to pregnancy, one job due to her criminal conviction and background check, and one job for lack of work.  AR 175, 182, 237-238.  These are reasons unrelated to Plaintiff's mental impairments.  Accordingly, *Gatliff* does not dictate reversal.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Angelica M. Felix.

IT IS SO ORDERED.

**Dated:**     **July 24, 2007**                    **/s/ John M. Dixon**
                                                  UNITED STATES MAGISTRATE JUDGE